IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Ian Olson, | Case No. 21-cv-1576 (ECT/DTS) |
| Plaintiff, | |
| v. | **MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENA** |
| Macalester College, | |
| Defendant. | |

This Court should quash Plaintiff's subpoena of non-party Jane Roe (and should deny Plaintiff's motion to compel her compliance with it).[1] Plaintiff and Ms. Roe were in a relationship while they were both students at Macalester. Ms. Roe sought and received an Order for Protection ("OFP") against Plaintiff, and Ms. Roe made a formal complaint to Macalester against Plaintiff based on his conduct during their relationship. Plaintiff made a complaint against Ms. Roe, and Macalester investigated both complaints. Macalester ultimately expelled Plaintiff, and Plaintiff sued Macalester.

Plaintiff now wants to gather documents from and depose non-party Ms. Roe, even though the law is clear that his claims against Macalester do not depend on—and, in fact, *cannot* involve—a retrying of Macalester's disciplinary process, an

---

[1] Non-party Jane Roe also submits this memorandum in opposition to Plaintiff's motion to compel her compliance with the subpoena.

evaluation of what happened between Plaintiff and Ms. Roe, or credibility assessments of either of them. Instead, his claims must focus on what Macalester did and didn't do, which Macalester can provide in discovery (and presumably has already done so).

Yet Plaintiff's subpoena on Ms. Roe—listing several categories of documents, which he will likely also want to cover during a deposition—seeks to dig into irrelevant and impermissible topics. This Court should refuse to allow Plaintiff to do so, particularly because having to gather documents or sit for a deposition would be incredibly burdensome on Ms. Roe. During their relationship and Macalester's investigations, Ms. Roe experienced significant physical, emotional, and mental trauma. She is still taking medication for her conditions. Although they improved with time and distance from Plaintiff, the possibility of becoming involved in Plaintiff's lawsuit against Macalester has worsened her symptoms. Weighed against the minimal—or non-existent—need for the discovery Plaintiff seeks from Ms. Roe, having to gather documents or sit for a deposition would be unduly burdensome. Ms. Roe respectfully requests that this Court quash the subpoena and decline to compel her compliance with it.

**FACTUAL BACKGROUND**

### A.    Macalester's investigations

Ms. Roe was a student at Macalester college from August 2016 to August 2020, when she finished her coursework. (Declaration of Jane Roe ("Roe

Dec.") ¶ 1.) Ms. Roe and Plaintiff were in a relationship when they were Macalester students. (*Id.* ¶ 4.) On November 7, 2019, Ms. Roe petitioned the Ramsey County Court for an Order for Protection against Plaintiff. (*Id.*) The same day, the Ramsey County District Court, Second Judicial District, entered an Emergency (Ex Parte) Order for Protection on Ms. Roe's behalf against Plaintiff (the "OFP"). (*Id.*; Ex. A.) Plaintiff was served with the OFP and on December 6, 2019, the Court held a hearing about the OFP. (Roe Dec. ¶ 4; Ex. A.) The OFP was effective until November 7, 2021. (Roe Dec. ¶ 4; Ex. A.)

On November 8, 2019, Ms. Roe made a formal complaint to Macalester against Plaintiff (the "Roe Complaint"). (Roe Dec. ¶ 5.) Over the next several months, Macalester investigated the complaint and Ms. Roe participated in its investigation, including by being interviewed by an investigator, identifying potentially relevant evidence, suggesting witnesses, reviewing the file, and submitting written statements. (*Id.*)

On March 4, 2020, while the Roe Complaint was still pending, Plaintiff made a formal complaint to Macalester against Ms. Roe (the "Olson Complaint"). (*Id.* ¶ 6.) Over the next several months, Macalester investigated the complaint and Ms. Roe participated in its investigation, including by being interviewed by an investigator, identifying potentially relevant evidence, suggesting witnesses, reviewing the file, and submitting written statements. (*Id.*)

On May 8, 2020, Macalester issued a Notice of Outcome regarding the Roe Complaint, in which Macalester's adjudicators found sufficient evidence that violations of Macalester's Policy and the Student Handbook's Harassment Policy by Plaintiff occurred. (*Id.* ¶ 7.) The Notice of Outcome included the sanctions against Plaintiff of expulsion, a no contact directive, and a no trespass notice. (*Id.*)

In approximately August 2020, Ms. Roe finished her Macalester coursework, and then moved out of Minnesota, ultimately securing a job in a different state. (*Id.* ¶ 8.) On December 8, 2020, Ms. Doe received a notice from Macalester that it was not continuing the complaint resolution process for the Olson Complaint. (*Id.* ¶ 9.)

**B.    Ms. Roe's mental, physical, and emotional conditions during her relationship with Plaintiff and the investigations**

During her relationship with Plaintiff and Macalester's investigations into the Roe Complaint and the Olson Complaint, Ms. Roe experienced significant physical, mental, and emotional distress. (*Id.* ¶ 11.) This has included the following, for which she has sought and received treatment from medical professionals starting in approximately October 2019:

- Posttraumatic stress disorder (PTSD) (acute and chronic)
- Social anxiety, isolation, and intimacy issues
- Panic attacks
- Dissociation
- Inability to focus
- Insomnia
- Night terrors

- Addiction
- Weight loss, digestive issues
- Hair loss
- Acne, rashes
- Depression, suicidal ideation
- PTSD-induced seizure

(*Id.*) Ms. Roe currently takes a prescribed antidepressant for depression and anxiety, and she previously took Prazosin to treat night terrors. (*Id.* ¶ 12.). Since separating from Plaintiff, Ms. Roe has participated in multiple support groups for abuse survivors and received individual therapy. (*Id.* ¶ 10.) Her symptoms improved after she left Macalester, particularly as more time passed without her seeing or interacting with Plaintiff. (*Id.* ¶ 12.)

### C.   Notice regarding the potential to be subpoenaed and contact from Plaintiff

Ms. Roe learned from Macalester's counsel in January 2022 that Plaintiff was considering serving her with a subpoena to testify in this case. (*Id.* ¶ 13.) Since then, she has been breaking out in acne and rashes, and her hair and weight loss have accelerated. (*Id.* ¶ 14.) She has had nightmares almost every night and her sleep has been disrupted. (*Id.*) She has felt pain and nausea from stress. (*Id.*) She has been breaking into fear-induced sweats. (*Id.*) She has also experienced a racing heart, difficulty breathing, and depression. (*Id.*)

On February 1, 2022, Ms. Roe engaged a lawyer to represent her. (*Id.* ¶ 15.) On February 2, 2022, at 7:32 p.m., Ms. Roe received a telephone call on her cell

phone from an unknown number while she was participating in an online support group. (*Id.* ¶ 15; *see also* Ex. B.) She answered the call, the caller said her name, and she asked who the caller was. (Roe Dec. ¶ 15.) Plaintiff identified himself as the caller and Ms. Roe believes she blacked out and stopped talking, Plaintiff said her name a number more times, and then Plaintiff hung up. (*Id.*) She then burst into tears. (*Id.*) Plaintiff called her again at 7:34 p.m. and again at 7:35 p.m., and she did not answer either call. (*Id.*; *see also* Ex. B.) Plaintiff called her again at 7:38 p.m. and she did not answer. (Roe Dec. ¶ 15; *see also* Ex. B.) His calls scared Ms. Roe so much that she then called 911. (Roe Dec. ¶ 15; *see also* Ex. B.) At 7:52 p.m., Plaintiff sent Ms. Roe two text messages. (Roe Dec. ¶ 15; *see also* Ex. C.) Ms. Roe was so scared from Plaintiff's repeated calls and text messages that, over the next few days, she experienced panic attacks, sobbing, flashbacks, dissociating, and loss of appetite. (Roe Dec. ¶ 17.)

On the evening of February 2, 2022, Ms. Roe's counsel contacted Plaintiff's counsel, introducing herself, letting them know that Ms. Roe had engaged her to represent Ms. Roe, and requesting that Plaintiff cease direct communication with Ms. Roe. (Gassman-Pines Dec. ¶ 4; *see also* Allen Aff. Ex. A.) Ms. Roe's counsel informed Plaintiff's counsel that she was not authorized to provide Ms. Roe's address and she was not authorized to accept service of a subpoena. (Gassman-Pines Dec. ¶ 5.)

**D.** **Attempts at service of the subpoena, and the burden of gathering documents or sitting for a deposition**

Ms. Roe does not want Plaintiff to know where she lives based on her history with Plaintiff and because she is afraid of him. (Roe Dec. ¶ 22.) During her time at Macalester, her permanent residence was 35 Linden Street, New Haven, Connecticut 06511, which is her father's current residence (the "New Haven address"). (*Id.* ¶ 2.) During the same time, Ms. Roe had different temporary residences in St. Paul, Minnesota. (*Id.*) She does not currently reside at the New Haven address, although she occasionally visits her father there. (*Id.* ¶ 3.) She currently resides in a different city and state. (*Id.*)

On May 17, 2022, while Ms. Roe was visiting her father, someone taped a subpoena directed to her on the door of the New Haven address. (*Id.* ¶ 18.) There was not a check or other payment for serving as a witness included with the subpoena. (*Id.*) No one handed the subpoena to her or her father. (*Id.*) A subpoena addressed to Ms. Roe at the New Haven address arrived by mail on approximately May 19, 2022. (*Id.*; *see also* Allen Aff. Ex. B.) At that time, Ms. Roe was still visiting her father. (*Id.*)

Since receiving a copy of the subpoena by mail to the New Haven address on May 19, 2022, Ms. Roe's physical and mental symptoms have worsened. (*Id.* ¶ 20). Reading the request for documents while scanning it to send to her lawyer led her to feel despair, distress, pain, and confusion. (*Id.*) If required to gather the

documents that the subpoena requests, she would be unable to work because of the distress that it would cause her. (*Id.*) Having to sit for a deposition would be worse: she believes that her depression and PTSD symptoms would increase and that her medication would not treat them sufficiently. (*Id.*) She is concerned that she would have a panic attack, an addiction relapse, or a return to suicidal ideation. (*Id.*)

## ARGUMENT

This Court should quash Plaintiff's subpoenas of Jane Roe because her documents and testimony would be irrelevant (or have minimal relevance) and the enormous physical, mental, and emotional burden on her outweighs Plaintiff's potential need.[2] "In evaluating whether the burden of production outweighs the likely benefit of discovery, 'concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing

---

[2] Plaintiff's initial attempt to serve Jane Roe with a subpoena was insufficient for at least two reasons: (1) it was taped to the door of her father's dwelling and usual place of above, not her own, and was not left with someone of suitable age, *see* Fed. R. Civ. P. 5(b)(2)(B); and (2) it did not include the required testimony fee. *See* Fed. R. Civ. P. 45(b)(1). Plaintiff's second attempt at service was through mail. Although Jane Roe disputes that mailing a subpoena is sufficient service under Rule 45, she acknowledges that recent case law calls into question whether subpoenas must be personally served. *Paisley Park Enterprises, Inc. v. Boxill*, 17-CV-1212 (WMW/TNL), 2019 WL 1036059, at *3 (D. Minn. Mar. 5, 2019) (stating that the growing trend is for courts to permit "substitute service" of a Rule 45 subpoena, "so long as the method of service is reasonably calculated to provide timely, fair notice and an opportunity to object or file a motion to quash"). Regardless, Jane Roe agrees that she received the subpoena and is now having the opportunity to be heard through this motion to quash.

needs.'" *In re Nat'l Hockey League Players' Concussion Injury Litig.*, No. 14-cv-2551 (SRN), 2017 WL 1493671, at *7 (D. Minn. April 26, 2017 (quoting *Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999)). The Eighth Circuit has warned against the potential for abuse, particularly in light of non-parties' privacy interests:

> "It is clear from experience that pretrial discovery by depositions . . . has a significant potential for abuse . . . This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties."

*Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (quoting *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 34-35, (1984)). Thus, even relevant discovery "is not permitted where no need is shown or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking the information." *Misc. Docket Matter No. 1*, 197 F.3d at 927 (internal quotation omitted).

Recognizing this fundamental standard, Federal Rule of Civil Procedure 45 *requires* that this Court quash or modify a subpoena that subjects a person to undue burden: "On timely motion, the court for the district where compliance is required *must* quash or modify a subpoena that: . . . (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv) (emphasis added). When a non-party challenges a subpoena on grounds that the request is over-burdensome, the party seeking the

discovery must establish that the information sought is relevant. *See Spartanburg Reg. Healthcare Sys. v. Hillenbrand Indus.*, No. 1:05-mc-107, 2005 WL 2045818, at *4 (W.D. Mich. Aug. 24, 2005). Courts will balance the need for the discovery against the burden imposed on the person ordered to produce documents, and that person's status as a non-party is a factor weighing against disclosure. *See Katz v. Batavia Marine & Sporting Supplies*, 984 F.2d 422, 424 (Fed. Cir. 1993).

Here, requiring Jane Roe to gather and produce a significant volume of documents, and then sit for a deposition, would cause her undue burden because it would lead to physical, mental, and emotional trauma. Her burdens outweigh Plaintiff's need for her documents and testimony because they have limited relevance to Plaintiff's claims against Macalester, and they are largely available directly from Macalester. This Court should exercise its broad discretion to deny Plaintiff's motion, particularly considering Jane Roe's status as a non-party and the potential for abuse in this circumstance. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984).

## II.   **Plaintiff has limited or no need for Jane Roe's documents and testimony.**

To satisfy the discoverability standard, Plaintiff must establish that the information he seeks has more than minimal relevance to his claims or defenses, which he cannot do in this circumstance. *Vaigasi v. Mgmt. Corp.*, No. 11 Civ. 5088, 2016 WL 616386, at *7 (S.D.N.Y. Feb. 16, 2016). Information that is "negligibly

relevant [or] minimally important in resolving the issues" does not satisfy the standard. *See VHT, Inc. v. Zillow Grp., Inc.*, No. C15-1096JLR, 2016 WL 7077235, at *1 (W.D. Wash. Sept. 8, 2016). As the party who issued the subpoena, Plaintiff bears the burden of demonstrating relevance. A*m. Electric Power Co., Inc. v. U.S.*, 191 F.R.D. 132, 136 (S.D. Ohio 1999) (citing *Katz*, 984 F.2d at 424-25); *see also Berryman v. Supervalu Holdings, Inc.*, No. 3:05-cv-169, 2008 WL 4934007, at *9 (S.D. Ohio 2008) ("At least when the relevance of a discovery request has been challenged the burden is on the requestor to show the relevance of the requested information.") (internal citation omitted). Furthermore, when a party seeks discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or is outside of the scope of discovery, the Court must limit discovery. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff's need for information from Jane Roe is non-existent or minimal in light of his claims and the availability of the relevant information from other sources.

### A. Plaintiff's claims do not require—or even permit—this Court or a fact-finder to retry the underlying disciplinary investigation.

Although Plaintiff's complaint and factual recitation includes a litany of grievances and allegations against Jane Roe, his legal *claims* are grounded in and based on his expulsion from Macalester. And the defendant in this case is Macalester, not Jane Roe. Plaintiff's complaint has five claims against Macalester: (1) gender discrimination under Title IX; (2) disability discrimination under the

Americans with Disabilities Act and the Rehabilitation Act; (3) Breach of Contract;

(4) Breach of the Covenant of Good Faith and Fair Dealing; and (5) Negligence. None

of those claims require discovery from Jane Roe.

Importantly, in this case, neither the Court nor the fact-finder will be tasked

with determining whether Plaintiff or Jane Roe's allegations against each other in

the underlying disciplinary actions were true or false. On that point, the court's

reasoning in *Doe v. University of the South ("Univ. of the South I")*, 687 F. Supp. 2d

744 (E.D. Tenn. 2009), is instructive. In *Univ. of the South I*, a former student sued

his university related to a sexual misconduct investigation, alleging Title IX

violations and various contract and tort claims. *Id.* at 751. The Court emphasized

that the plaintiff's claims did *not* require or permit a determination of the merits of

either student's allegations against the other in the underlying disciplinary action:

> This is not a lawsuit between the Complainant and the Plaintiffs. This
> Court is not asked to make an independent determination as to what
> happened between the Plaintiff John Doe and the Complainant on
> August 30, 2008. The Court therefore expresses no opinion as to
> whether a sexual assault occurred, whether any such acts were
> consensual, or who, as between John Doe and the Complainant is
> credible. In short, the instant lawsuit does not call for a judicial
> determination either in favor or against John Doe's claims or in favor
> or against the Complainant, regarding the merits of her claims.

*Id.* Indeed, the Court noted that its role was limited:

> This case comes before this Court in limited posture. The Plaintiffs'
> claims against the University are grounded primarily upon the manner
> in which the University officials conducted the process leading to its
> conclusion that the Plaintiffs had violated the University's Code of
> Conduct and its imposition of sanctions. . . . Accordingly, "[t]his Court's

> review is substantially circumscribed; the law does not allow this Court
> to retry the University's disciplinary proceeding."

*Id.* (quoting *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 14 (D. Maine 2005) (involving claims of constitutional, contractual, and tort violations stemming from a university disciplinary proceeding).

In similar cases, courts have emphasized that "[t]he Court's role, of course, is neither to advocate for best practices or policies nor to retry disciplinary proceedings." *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 461 (S.D.N.Y. 2015) (involving claims of gender discrimination under Title IX, breach of contract and breach of good faith and fair dealing, negligence, and other claims stemming from a college disciplinary proceeding). For example, in *Doe v. Vanderbilt University*, another lawsuit in which a former student sued his university under Title IX (and under other laws) related to a misconduct investigation, the court emphasized that the lawsuit did ***not*** require or permit it to make an independent assessment of what happened between the two students:

> Furthermore, this is not a lawsuit between Plaintiff and Jane Roe. Accordingly, the Court is not asked to make an independent determination as to what happened between Plaintiff and Jane Roe on February 10, 2017. . . . The Court only evaluates factual discrepancies to the extent they go to questions regarding the nature of the investigation, rather than the quality of the outcome.

*Doe v. Vanderbilt Univ.*, No. 3:18-CV-00569, 2019 WL 4748310, at *6 (M.D. Tenn. Sept. 30, 2019) (internal quotation and citations omitted); *see also Pierre v. Univ. of Dayton*, 143 F. Supp. 3d 703, 713 (S.D. Ohio 2015) (noting in a lawsuit involving

claims under the ADA and Rehabilitation Act, Title IX, and other state-law claims, that "the issue before this Court is not whether the [university] should have believed a certain party's version of events"); *Yu*, 97 F. Supp. 3d at 461 (explaining that the Court's role is limited to determining whether the school discriminated against the plaintiff under federal law or otherwise violated a provision of state law when it expelled him for sexually assaulting a fellow student); *Doe v. Univ. of the S. ("Univ. of the South II")*, No. 4:09-cv-62, 2011 WL 1258104, at *14 (E.D. Tenn. Mar. 31, 2011) (concluding that disputed facts may be used to highlight weaknesses in the competence of the investigation or the impartiality of the proceeding, but not to assess the merits of the university's ultimate findings). Nor is it the Court's (or the fact-finder's) province to make credibility determinations in this type of case:

> This is not a lawsuit between the Complainant and the Plaintiffs . . .
> The Court therefore expresses no opinion as to whether a sexual assault occurred, whether any such acts were consensual, or who, as between John Doe and the Complainant is credible.

*Univ. of the South I*, 687 F. Supp. at 755.

As the U.S. Supreme Court has stated, "It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking in wisdom or compassion." *Wood v. Strickland*, 420 U.S. 308, 326 (1975) (abrogated on other grounds by *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)); *see also Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999) ("[C]ourts should refrain from second-guessing the disciplinary decisions made by school

administrators."). Indeed, federal courts are not super-disciplinary bodies, and they should not impose their decisions on those of school administrators. *Plummer v. Univ. of Hous.*, 860 F.3d 767, 772 (5th Cir. 2017) ("It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking in wisdom or compassion."); *Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d 984, 989–90 (D. Minn. 2017) ("As a general rule, Title IX is not an invitation for courts to second-guess disciplinary decisions of colleges or universities."); *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 13 (D. Me. 2005) ("This Court's review is substantially circumscribed; the law does not allow this Court to retry the University's disciplinary proceeding."). And it is not for this Court to construe the disciplinary process as "requiring a particular outcome." *Anderson v. Vanderbilt Univ.*, 450 F. App'x 500, 502 (6th Cir. 2011). Indeed, even if a plaintiff claims that the outcome of a disciplinary proceeding was erroneous, the fact-finder must assess the record that was before the disciplinary body, not a record that the plaintiff would like to gather and present:

> Plaintiffs who claim that an erroneous outcome was reached must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding. If no such doubt exists ***based on the record before the disciplinary tribunal***, the claim must fail.

*Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994) (emphasis added).

**B.   Plaintiff presumably has access to all of the information before Macalester's disciplinary tribunal, and the other information he seeks is irrelevant.**

This Court must evaluate Plaintiff's subpoena for documents and depositions within the context of Plaintiff's claims and the limitations of those claims expressed consistently in case law. The requests in Plaintiff's subpoena duces tecum to Jane Roe are either more easily available from Macalester, which is actually a party to this lawsuit, or are entirely irrelevant.

For example, Request No. 1 seeks all documents "concerning every disciplinary action in which Jane Roe was a complainant, respondent, or witness at Macalester College." (*See* Allen Aff. Ex. B.) As an initial matter, Macalester should have all such documents, including all documents related to the disciplinary actions involving Plaintiff. And, in any event, disciplinary actions unrelated to those involving Plaintiff are irrelevant to his claims against Macalester in this lawsuit. Request Nos. 2-9 seek a wide variety of information, including Jane Roe's documents concerning Plaintiff and his family; diary or similar entries about Plaintiff; any agreement, lease, sublease or contract that Jane Roe claims "entitled [her] to live in [Plaintiff's] apartment;" photographs, videos, or other records of video images of Plaintiff's apartment; records of Jane Roe's communications with a non-party, who Jane Roe previously dated; records that Jane Roe claims depict abuse by Plaintiff; medical records that Jane Roe claims depict sexual abuse; and non-privileged documents concerning the civil action in which the Court entered an order for

16

protection. (*See id.*) None of these documents are relevant to Plaintiff's claims against Macalester. Instead, they appear to be directed at litigating what happened between Plaintiff and Jane Roe, which courts consistently hold is impermissible.

Similarly, any deposition of Jane Doe would presumably seek the same or similar information, which, again, would be impermissible. And, to the extent that Plaintiff seeks information available from Macalester, this Court should deny his request. *Doe v. Univ. of St. Thomas* provides an apt example because this Court quashed a subpoena and then denied a motion to compel in similar circumstances. *See* Gassman-Pines Aff. Ex. 1 (August 21, 2017 Order on Motion to Quash); Ex. 2 (August 21, 2017 Hearing Transcript) at 21-26 (explaining decision and rationale on the record); No. CV 16-1127 (JRT/DTS), 2018 WL 10704607, at *4 (D. Minn. Aug. 6, 2018). In that case, the plaintiff sued the University of St. Thomas after a disciplinary action related to an allegation that he assaulted Jane Doe, who was not a party to the lawsuit. When the plaintiff sought to depose her, she successfully moved to quash the subpoena. The Court concluded that "it is possible that [Jane Doe] would have relevant testimony, although I think that in the first instance, the University of St. Thomas, there is nothing unique to the information that Jane Doe would possess regarding the conduct of the investigation itself." (Ex. 2 at 23.) On the motion to quash, the Court concluded that the burden on Jane Doe outweighed Plaintiff's need for the information, but left open the possibility that Plaintiff could

revisit the request after the remaining discovery was complete. (*Id.* at 25.) Plaintiff ultimately did so through a motion to compel, but again the Court rejected Plaintiff's request to depose Jane Doe, based in part on the availability of information from the university itself:

> [Plaintiff] suggests Jane Doe may testify that she did not make statements attributed to her by investigators in their report. But Plaintiff has already deposed the investigators and has had full access to all persons who conducted the investigation he claims was flawed.

2018 WL 10704607, at *4.

This case is no different. To answer the questions central to the Plaintiff's claims, this Court or a fact finder will ultimately assess Macalester's investigations. But Macalester—not Jane Roe—has all of the information about its own investigations. Macalester knows—and presumably can testify about—what its investigators did, who they interviewed, what questions they asked, what documents they gathered, and how they weighed the information. Macalester also has investigation files that documented the investigations. Jane Roe cannot herself shed light on those questions, because she was only a participant in the investigation, just like Plaintiff. And how Jane Roe *now* describes what happened between her and Plaintiff is irrelevant because it is not this Court's role—or the fact-finders' role—to determine what happened between Plaintiff and Ms. Roe, or to redo Macalester's investigation.

Instead, this Court or the fact finders will evaluate Macalester's investigation, and they can do so without Jane Roe's testimony. *Yu v. Vassar College* is instructive on this point. In *Yu*, the plaintiff sued Vassar College after the college expelled him for alleged nonconsensual sexual intercourse with a female student, alleging Title IX violations and negligence, among other claims. *See Yu v. Vassar Coll.*, 97 F. Supp. 3d at 454-55. The Court declined to allow the plaintiff to depose the non-party complainant, ruling that the burden on the complainant of being deposed outweighed the potential benefit of her testimony. *See Yu v. Vassar Coll.*, Case No. 13-cv-4373-RA-MHD, (ECF 44) at 1 (S.D.N.Y Apr. 9, 2014) (Gassman-Pines Aff. Ex. 3). Later, the court issued a summary judgment decision, based on the investigation and the complainant's statements that were a part of it. *See Yu v. Vassar Coll.*, 97 F. Supp. 3d at 454 ("Complainant's version of events, *as reported in her statements to Vassar's investigators, summarized in Horowitz's report, and submitted to the Vassar hearing panel*, is very different." (emphasis added)). Just as in *Yu*, Plaintiff has no need for Jane Roe's testimony, and the burden it would cause her outweighs any minimal need he may identify.

## III.   Complying with a subpoena would cause undue burden on Jane Roe.

Weighed against Plaintiff's minimal or non-existent need for documents or testimony from Ms. Roe, the burden on Ms. Roe would be extraordinary. During her relationship with Plaintiff and Macalester's investigations, Ms. Roe experienced significant physical, mental, and emotional distress. She sought treatment from

medical professionals beginning in October 2019, and is still taking medication related to her conditions. Although her conditions improved with time and distance from Plaintiff, since learning of the potential need for her to gather documents and sit for a deposition, her symptoms have worsened. After Plaintiff repeatedly called her and texted her in early February, Ms. Roe experienced panic attacks, sobbing, flashbacks, dissociating and loss of appetite. When reviewing the document categories listed in the subpoena duces tecum, she felt despair, distress, pain and confusion. Having to gather the documents or sit for a deposition would cause her distress significant enough to disrupt her work and risks increasing her depression and PTSD symptoms to the point where her current medication would not treat them sufficiently. She fears panic attacks, an addiction relapse, and a return to suicidal ideation. These mental, physical, and emotional symptoms are more significant than those described by the non-party in the *Doe v. St. Thomas* matter, where the court concluded that the burden outweighed any potential relevance to the underlying claims and quashed the subpoena and denied a motion to compel. This Court should do the same, and quash Plaintiff's subpoena (and deny his motion to compel).

## CONCLUSION

For the foregoing reasons, Non-Party Jane Roe respectfully requests that this Court quash the subpoena that Plaintiff sent to her, and deny Plaintiff's motion to compel.

Dated:  June 21, 2022                    **GREENE ESPEL PLLP**


 s/ Jenny Gassman-Pines
Jenny Gassman-Pines, Reg. No. 0386511
222 S. Ninth Street, Suite 2200
Minneapolis, MN  55402
jgassman-pines@greeneespel.com
(612) 373-0830

Attorneys for Non-Party Jane Roe